IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-03349-CMA-STV

PACOPTIC NETWORKS, LLC,

    Plaintiff/Counterclaim Defendant,

v.

EARTHNET INC.,

    Defendant/Cross Claim Defendant/Counterclaim Plaintiff/Cross Claim Plaintiff,

4735 WALNUT, INC.,

    Defendant/Cross Claim Plaintiff/Cross Claim Defendant,

SHERI VALENTINER, LLC, *d/b/a* Valentiner and Associates,

    Defendant.

and

4735 WALNUT, INC.,

    Third-Party Plaintiff/Third-Party Counterclaim Defendant,

v.

BAHMAN SHAHID-SALESS, and
ARIA AND COMPANY,

    Third-Party Defendants/Third-Party Counterclaim Plaintiffs.

---

**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM**

---

This matter is before the Court on Plaintiff/Counterclaim Defendant PacOptic Networks, LLC's ("PacOptic") Motion to Dismiss the indemnity counterclaim asserted by Defendant/Counterclaim Plaintiff Earthnet Inc. ("Earthnet") pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. # 33.) For the following reasons, the Court grants the Motion.

## I.     BACKGROUND

The Court takes the following factual allegations from Earthnet's counterclaim (Doc. # 43)[1] and accepts them as true for purposes of reviewing the Motion to Dismiss. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

This case arises from a dispute over the disposal of equipment owned by PacOptic, a Competitive Local Exchange Carrier ("CLEC") and telecommunication provider in Colorado. (Doc. # 43 at 9.) On August 1, 2016, PacOptic entered into a General Service Contract ("Contract") with Earthnet.[2] (*Id.*) Pursuant to the Contract, Earthnet agreed to provide colocation services to PacOptic by hosting PacOptic's Voice-Over-IP equipment ("Equipment") at Earthnet's data center located at 4735 Walnut Street (the "Building") in Boulder, Colorado. (*Id.*) The Building was managed by

---

[1] Although PacOptic titles its motion "Motion to Dismiss Earthnet's Amended Counterclaim," the Court notes that Earthnet has not amended its counterclaim. Rather, Earthnet filed (1) an Amended Answer to Plaintiff PacOptic Networks, LLC's Complaint, Counterclaim, and Crossclaim (Doc. # 27), in which it amended its answer and asserted a crossclaim, but did not amend its counterclaim, and (2) a First Amended Answer to Plaintiff PacOptic Networks, LLC's Complaint, Counterclaim, and Crossclaim (Doc. # 43), which was responsive to PacOptic's Amended Complaint (Doc. # 36) but included no changes to Earthnet's previously asserted counterclaim and crossclaim. *See* (Doc. # 43 at 2 n.1.) The Motion to Dismiss (Doc. # 33) therefore remains pending, and the Court cites to Doc. # 43 as the operative version of Earthnet's counterclaim.

[2] The Court may properly consider the Contract because Earthnet incorporated it into its Counterclaim. (Doc. # 43 at 9.) The Contract is attached to PacOptic's Complaint at Doc. # 1-1.

Defendant Sheri Valentiner, LLC ("Valentiner") on behalf of Defendant 4735 Walnut, Inc. ("Walnut"). (*Id.*)

The Contract included the following indemnity provision:

(8) INDEMNITIES. Each party will be indemnified and saved harmless by the other party from and against all loss, liability, damage and expense, including reasonable counsel fees, caused by:

1. Fire, flood, war, or any other casualty to the other party's owned equipment physically located at Earthnet facilities.

2. Acts or omissions of officers, employees, agents, or contractors of either parties that arise out of or are caused by the construction, installation, maintenance, presence, or use or removal of systems, channels, terminal equipment or software not provided by either party that are connected to Services and that result in claims and demands for damages to property or for injury or death to persons including payments made under any Worker's Compensation Law or under any plan for employee's disability or death benefits;

3. Claims for libel, slander, invasion of privacy or infringement of copyright, and invasion and/or alteration of private records or data arising from any information, data or message transmitted over the network by the other party, and

4. Claims for infringement of patents arising from the use of equipment, software and systems provided by the indemnifying party in connection with Services.

(Doc. # 1-1 at 5–6.)

In March 2019, Earthnet informed PacOptic that it would likely terminate its interest in the Building and move its data center to a new location in Louisville, Colorado. (Doc. # 43 at 9.) Accordingly, Earthnet requested PacOptic's permission to move the Equipment to its new data center location. (*Id.*) On March 26, 2019, a

3

representative of PacOptic, Stevin Dahl, refused and stated "PacOptic is staying at your location in Boulder, Colorado. It will not move. It must stay at the current location." (*Id.*)

In June 2019, Earthnet moved all of the hardware/equipment of its colocation services customers within its data center, with the exception of PacOptic's equipment, to its new location in Louisville. (*Id.* at 10.) In November 2019, "upon PacOptic's request and permission," Earthnet disconnected and moved PacOptic's Equipment to a neighboring office in the Building. (*Id.*) Prior to moving out of the Building entirely, on May 11, 2020, Earthnet confirmed that PacOptic wanted to keep its Equipment located in the Building. (*Id.*) Earthnet alleges that "the parties agreed that Earthnet would move PacOptic's Equipment out of the Office and into the Building's utility room so that PacOptic could maintain its presence within the Building." (*Id.*) That same day, Earthnet emailed Stevin Dahl a picture showing that the Equipment was moved to the Building's utility closet and was "ready to go" but remained disconnected. (*Id.*)

On June 3, 2020, Earthnet emailed Stevin Dahl requesting that PacOptic send someone to hook up its equipment in the Building's utility closet to make it operational. (*Id.* at 11.) Earthnet then vacated the Building on June 12, 2020. (*Id.*) On July 10, 2020, Sheri Valentiner, principal of Defendant Valentiner, emailed Earthnet inquiring as to the ownership of the Equipment left in the utility room because the Equipment was not being used. (*Id.*) Earthnet responded shortly after stating that the Equipment was owned by PacOptic. (*Id.*)

Earthnet alleges that from July 10, 2020 to November 16, 2020, it received no other communications from Sheri Valentiner or anyone else associated with the Building

concerning the Equipment. (*Id.*) On November 17, 2020, Sheri Valentiner informed Earthnet that the Equipment had been removed from the utility room and disposed of. (*Id.*) According to Earthnet, Valentiner and/or Walnut disposed of the Equipment without notifying or obtaining the consent of Earthnet or PacOptic because they "believed that they had a right to dispose of the property because the Equipment was disconnected and allegedly abandoned." (*Id.*) Earthnet further alleges that "PacOptic never connected its Equipment to make it operational within the Building's utility room despite the parties' agreement and repeated requests from Earthnet to do so." (*Id.*)

PacOptic initiated the instant lawsuit against Earthnet, Walnut, and Valentiner on December 14, 2021. (Doc. # 1.) In its Amended Complaint (Doc. # 36), PacOptic asserts six claims for relief: (1) breach of contract against Earthnet; (2) conversion against Walnut and Valentiner; (3) in the alternative, trespass to chattels against Walnut and Valentiner; (4) in the alternative, negligence against Walnut and Valentiner; (5) violation of Colo. Rev. Stat. § 38-20-107 against Walnut, as a "lienholder" of the Equipment; and (6) in the alternative, negligence per se in violation of Colo. Rev. Stat. § 38-20-116(2) against Walnut.

Earthnet filed a counterclaim for contractual indemnity against PacOptic and a crossclaim for contractual indemnity against Walnut.[3] (Doc. # 43 at 12, 15.) In its

---

[3] In addition, Walnut filed a Third-Party Complaint (Doc. # 22) asserting crossclaims against Earthnet and claims against Third-Party Defendants Aria and Company, LLC ("Aria"), a former unit owner in the Building, and Bahman Shahid-Saless, principle of both Earthnet and Aria. Walnut alleges that Earthnet was a tenant of Aria and that after Aria sold its unit and moved out, Shahid-Saless attempted to keep collecting rent from PacOptic by moving the Equipment to Walnut's common areas. On June 8, 2022, the Court entered an order staying all crossclaims between Walnut and Earthnet and all third-party claims and counterclaims between Walnut and

counterclaim, Earthnet asserts that PacOptic "must indemnify and hold harmless Earthnet for its breach of contract claim as well as [Walnut's] crossclaims against Earthnet because PacOptic's omission caused the removal of its own Equipment" by Defendants Valentiner and Walnut, "who were not parties to the Contract and believed the Equipment was abandoned." (*Id.* at 12–13.) Earthnet specifically points to PacOptic's failure to connect its Equipment in the utility room in the Building as an "omission" triggering the indemnity provision of the Contract. (*Id.*)

PacOptic now moves to dismiss Earthnet's counterclaim on the basis that it fails to state a claim for which relief can be granted because the indemnity provision is inapplicable to the instant dispute. (Doc. # 33.) Earthnet filed a Response (Doc. # 59), and PacOptic filed a Reply (Doc. # 61.) The matter is now ripe for review.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of [a] plaintiff's factual allegations are true and construes them in the light most favorable to the

---

Aria and Shahid-Saless pending arbitration. (Doc. # 66.) PacOptic's claims, and Earthnet's counterclaim, are not stayed.

plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and brackets omitted).

### III. DISCUSSION

PacOptic argues that Earthnet's indemnity counterclaim is subject to dismissal under Rule 12(b)(6) because (1) the indemnity provision of the Contract does not contemplate shifting risk in actions between PacOptic and Earthnet; (2) the provision explicitly does not apply to PacOptic's Equipment at issue; and (3) even if the indemnity provision is ambiguous as to whose equipment it applies to, the ambiguity must be construed against Earthnet as the party seeking indemnification. (Doc. # 33 at 7.) The Court agrees with PacOptic that the indemnity clause does not apply to PacOptic's breach of contract claim and Earthnet's counterclaim must therefore be dismissed.

The interpretation of a contract presents a question of law. *Sch. Dist. No. 1 v. Denver Classroom Tchrs. Ass'n*, 433 P.3d 38, 41 (Colo. 2019). Under Colorado law, the Court's primary obligation in interpreting a contract is "to effectuate the intent of the contracting parties according to the plain language and meaning of the contract." *Albright v. McDermond*, 14 P.3d 318, 322 (Colo. 2000). "An indemnity agreement is subject to the same rules of construction that govern contracts generally." *Mid Century Ins. Co. v. Gates Rubber Co.*, 43 P.3d 737, 739 (Colo. App. 2002). Accordingly, it should be "interpreted in its entirety to give effect to all of its provisions so that none are rendered meaningless." *Id.* Further, indemnity agreements should be strictly construed. *See Pub. Serv. Co. of Colo. v. United Cable Television of Jeffco, Inc.*, 829 P.2d 1280, 1284 (Colo. 1992) (A "contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties" (quoting *United States v. Seckinger*, 397 U.S. 203, 211 (1970))). "Ambiguities will be resolved against the party seeking indemnity." *Williams v. White Mountain Const. Co.*, 749 P.2d 423, 426 (Colo. 1988).

The Court agrees with PacOptic that Earthnet's counterclaim is irreconcilable with the plain language of the indemnity provision because the provision is intended to allocate the risk and cost of *third-party* claims, not intra-party claims between the parties themselves. This interpretation of the indemnity clause reflects the principle in Colorado that "[a]n indemnity provision generally applies to a claim asserted by a third party against the indemnitee, not to a claim based upon injuries or damages suffered directly

8

by the indemnitor." *Mid Century*, 43 P.3d at 739; *see also Mesa Sand & Gravel Co. v. Landfill, Inc.*, 759 P.2d 757, 760 (Colo. App. 1988) (holding that a mutual indemnity clause was inapplicable to an intra-party breach of contract action), *rev'd on other grounds*, 776 P.2d 362 (Colo. 1989). The mutual indemnity clause in the Contract provides that "[e]ach party will be indemnified and saved harmless by the other party from and against" loss or liability caused by:

> 2. Acts or omissions of officers, employees, agents or contractors of either parties that arise out of or are caused by the construction, installation, maintenance, presence, or use or removal of systems, channels, terminal equipment or software not provided by either party that are connected to Services and that result in claims and demands for damages to property.

(Doc. # 1-1 at 5–6) (emphasis added). If the clause extended to *intra-party* claims, then each party would be required to indemnify the other for any breach of contract action arising under the circumstances prescribed by the clause. The Court refrains from reading the indemnity provision in such a way as to subsume the parties' rights and obligations enshrined in the Contract. *See Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 793 (Colo. App. 2001) ("[A] contract should never be interpreted to yield an absurd result."); *Lahey v. Covington*, 964 F. Supp. 1440, 1446 (D. Colo. 1996) ("For an indemnity agreement to be enforceable, it must contain clear and unequivocal language which manifests the parties' intent that the indemnitee be indemnified for the expenses at issue.").

Moreover, even if the Court were to agree with Earthnet that the indemnity provision extends to an intra-party breach of contract claim, the Court concludes that the clause is nevertheless inapplicable to the instant dispute because the clause

9

unambiguously applies to *third-party* equipment—not PacOptic's Equipment. The clause states that the parties mutually indemnify each other with respect to "acts or omissions . . . of the parties . . . that arise out of or are caused by the . . . use or removal of systems, channels, terminal equipment or software **not provided by either party** that are connected to Services and that result in claims and demands for damages to property." (Doc. # 1-1 at 6) (emphasis added). Although Earthnet argues that the phrase "not provided by either party" applies to *labor services* (*e.g.*, "use or removal") (Doc. # 59 at 11–12), the Court is unpersuaded. Rather, the Court finds that the phrases "**not provided by either party** and **are connected to Services**," read together, plainly describe the immediately preceding "systems, channels, terminal equipment or software." (Doc. # 1-1 at 6.) Thus, the indemnity clause applies to equipment *not provided by either party* that is connected to Services. (*Id.*) Because PacOptic's breach of contract claim arises from the removal of *PacOptic's* Equipment, and not equipment provided by a third party, the indemnity clause does not extend to the instant dispute.

In sum, presuming that the factual allegations in Earthnet's counterclaim are true and construing them in the light most favorable to Earthnet, the Court finds that the counterclaim fails to state an indemnity claim for which relief may be granted. *Hall*, 935 F.2d at 1109. Because the indemnity clause in the Contract applies to acts or omissions concerning equipment "not provided by either party," PacOptic is not required to indemnify Earthnet for any of PacOptic's alleged omissions with respect to its own Equipment. The Court therefore grants PacOptic's Motion to Dismiss. (Doc. # 33.)

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that PacOptic's Motion to Dismiss Earthnet's Counterclaim (Doc. # 33) is GRANTED. It is

FURTHER ORDERED that Earthnet's counterclaim is DISMISSED WITH PREJUDICE for failure to state a claim pursuant to Rule 12(b)(6).[4]

DATED:  October 14, 2022

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge

---

[4] "[D]ismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).